JAMES SHREVE and ALEXANDER SHREVE v. THOMAS BLACK and WILLIAM MCKNIGHT.

In a bill filed for an injunction to restrain waste or irreparable mischief, it is not necessary to set out the complainant's title at length.

Upon the argument of a motion for an injunction, the answer of one defendant will be received, and heard upon the argument as an affidavit, in answer to the complainant's bill.

Cutting off the timber from a tract of woodland, valuable chiefly for the wood upon it, is an irreparable injury.

Injunctions have repeatedly been granted in cases of mere trespass, and that too when committed under pretence of title.

A complainant, by stating the injury to have been committed under allegation of title, does not state himself out of court.

Injunction to restrain irreparable mischief, by the cutting of timber, denied, where the answer alleged the title and possession of the premises to be in the defendants, and denied the title and possession of the complainants.

INJUNCTION bill, filed on the eighth of December, eighteen hundred and forty-one. The complainants, by their bill, charge, that their father, Joshua Shreve, was in his lifetime and at the time of his death, seized in his demense as of fee, of and in the

undivided eight ninth parts of all the following described tract of land and premises, situate in the township of New-Hanover, in the county of Burlington, butted and bounded as follows, (describing it by metes and bounds,) containing about five hundred and eighty-six acres. That being so thereof seized, the said Joshua Shreve, on the twelfth day of July, in the year of our Lord one thousand eight hundred and nineteen, made and executed his last will and testament, in due form of law to pass real estate, and did therein and thereby, amongst other things, give and devise to the complainants, in fee simple, the said eight ninth parts of the said tract of land and premises : which said will, after the death of the said Joshua Shreve, (who died on the third day of August, in the year of our Lord one thousand eight hundred and nineteen,) was duly proved and recorded in the surrogate's office of the county of Burlington.

That on the ninth day of October in the year of our Lord one thousand eight hundred, the complainant, Alexander Shreve, and one Charles Shreve, became the owners in fee simple of the remaining one undivided ninth part of said tract of land and premises, in equal moieties, by virtue of a deed of bargain and sale from Beulah Newbold, to them the said Charles Shreve and Alexander Shreve, bearing date the day and year last aforesaid. And that by virtue of said deed of bargain and sale, the complainant, Alexander Shreve, became the owner and posessor of the one undivided eighteenth part of the said land and premises, as tenant in common with the said Charles Shreve and Joshua Shreve ; and that by virtue of said devise the complainants became at the death of their father the owners in fee simple of the said undivided eight ninth parts of said tract of land and premises, and that the complainants, Alexander Shreve and James Shreve, then entered into the possession thereof, and have continued to be the owners and possessors of the said eight ninth parts of said tract of land up to the present time.

That the said undivided eighteenth part of said land and premises, so as aforesaid conveyed to the said Charles Shreve,

has remained in the possession of him up to the time of his death, and since his death up to the present time in Richard C. Shreve, Alexander R. Shreve, Charles Shreve and Rebecca Mc-Henry, the children and heirs at law of the said Charles Shreve, who died intestate. That the said tract of land is entirely timber and woodland, and is chiefly valuable on account of the wood and timber growing thereon. That the tract is now covered with a thrifty growth of young trees and timber, which is rapidly increasing in size and value, and that it will not be fit for cutting for a number of years; that the complainants for a long time have been in the habit of cutting out the old and dead trees standing and being on the said tract, so that there are now hardly any trees upon it which can be cut without doing irreparable injury to the property ; that the present value of the said tract of woodland is about eight thousand dollars, but that if it were permitted to remain in its present condition for ten or fifteen years, it would be worth double that sum ; that Thomas Black of Springfield, and William McKnight of Bordentown, in said county of Burlington, pretending to have some claim or title to said premises, under a sale made to them by persons appointed by an act of the legislature of the state of New-Jersey, to sell certain real estate, late the property of Stacy Biddle, of said county, deceased, entered upon said tract of land, with their laborers, in the month of October, in the year of our Lord one thousand eight hundred and forty, and cut down about one hundred cords of the wood thereon growing ; that immediately thereafter, the complainants commenced an action of trespass against the said Thomas Black and William McKnight, in the supreme court of judicature of New-Jersey, to recover damages against them for the said trespass; that said suit is still pending undetermined, owing to unavoidable difficulties arising in the prosecution thereof; and the complainants have made necessary arrangements to have the said suit brought to trial at the next circuit court to be holden in and for the county of Burlington, on the second Tuesday of February next, when they hope and intend that the same shall be tried.

[Shreve v. Black et al.]

That from the commencement of the said suit, until the six-teenth day of November, in the year of our Lord one thousand eight hundred and forty-one, the said Thomas Black and William McKnight refrained from cutting the timber and wood growing thereon, and from committing any other trespass on said premises, but that on the said sixteenth day of November, in the year of our Lord one thousand eight hundred and forty-one, and on divers days and times between that day and the twenty-fifth day of the said month, they entered on said premises with their servants and laborers, and cut down large quantities of the wood and timber growing and standing on said premises; that they have cut down the young trees and timber which were not fit for cutting, and by that means have committed great spoil and destruction upon the said premises. They have also begun to clear off the ground, for the purpose of grubbing and converting the soil into arable land; and they give out and declare that they intend to proceed on and cut off the whole or the greater part of the woodland on said tract; that the said Thomas Black and William McKnight have no right or title to the said premises, and that their actings and doings are contrary to equity and good conscience, and that the injury and mischief which they are now doing, and which they threaten to do to the property of the complainants, is irreparable, and for which the courts of common law, in which they can merely recover damages, cannot afford them an adequate remedy and redress, and that unless they be restrained by the order and injunction of this court, they will proceed to the commission of further waste and destruction in the premises.

The bill prays that an account may be taken by and under the direction of the court, of the wood and timber which the defendants have cut upon the said premises, and in what manner, and by whom the same may have been disposed of; and that the said defendants may be decreed to pay the full value thereof to the complainants; and that the defendants may be restrained from committing further waste or destruction on the said premises.

On filing the bill, the chancellor intimated that the practice of the court had been, to deny injunctions upon similar applications, and directed that notice of the motion should be given to the defendants. Notice was accordingly given; and pursuant to the notice, the motion was heard at Newark, on the sixteenth of December. On the fourteenth of December an appearance was entered by the defendants; and on the sixteenth of December, previous to the argument, an answer was filed by William McKnight, one of the defendants.

The answer denies, that to his knowledge or belief, the father of the complainants was ever seized of an estate of inheritance in the undivided eight ninth parts of the said tract of land, or that the said Alexander Shreve and Charles Shreve, ever became the owners of the remaining ninth part of the said tract, as charged in the complainants' bill. Admits that the said Joshua Shreve made and executed a last will and testament, and that he died at or about the time specified in the bill of complaint, leaving the said will unrevoked; but denies that he devised the said eight ninth parts of the said tract to complainants, and if he did, denies that he had any right to do so; denies that to defendant's knowledge or belief, the complainants became seized of the said eight ninth parts of the said tract, on the death of their father, or that they entered into possession thereof as owners, or claiming to be such, or that they have continued to be the owners and possessors thereof up to the present time; denies that the said Alexander and Charles Shreve ever became owners of the other one ninth part of the said premises, or that the children of the said Charles ever became the owners or had the possession thereof.

The answer further states, that Thomas Newbold, being seized and possessed by divers good conveyances, of a large tract of land, including the premises in question, by deed dated the tenth of February, seventeen hundred and seventy-nine, conveyed eighty acres, the south-westerly part of said tract, to Joseph Biddle; that the said Thomas Newbold afterwards died, seized and possessed of the residue of the said tract, intes-

[Shreve v. Black et al.]

tate, leaving several children and heirs at law; that on the twenty-first of December, seventeen hundred and seventy-six, letters of administration upon his estate were granted to Ann Newbold, Joseph Lamb and the said Joshua Shreve; that in the term of May, seventeen hundred and eighty-seven, the said Joseph Lamb and Joshua Shreve, the surviving administrators of the said Thomas Newbold, applied to the orphans' court of the county of Burlington, and obtained an order for the sale of the real estate of the said Thomas Newbold, for the payment of his debts; that by virtue of the said order, the said administrators sold a tract containing about four hundred and seventy acres, being the residue of the tract described in the complainants' bill, to the said Joseph Biddle, and conveyed the same to him, by deed dated the tenth day of March, seventeen hundred and ninety; that the said Joseph Biddle thereupon entered into possession thereof, and continued thus seized and possessed until his death; that by his last will and testament, bearing date the seventh of April, seventeen hundred and ninety-one, he devised the same to his son, Stacy Biddle; that the said Stacy Biddle, by his will, bearing date the ninth day of November, seventeen hundred and ninety-seven, devised the same to his mother, Sarah Biddle, for life, and after her death to his sister, Beulah Sansom, for her life, or in tail, and after her death directed his executors to sell the same; that the said Sarah Biddle held and possessed the said land until her death, about the year eighteen hundred and seven; that Beulah Sansom thereupon entered into possession thereof, under the said will of Stacy Biddle, until her death, sometime in the year eighteen hundred and thirty-five, without issue; that during the greater part of this time, James Shreve, one of the complainants, held and occupied the tract as the tenant of Sarah Biddle, during her life, and afterwards as a tenant of Beulah Sansom; that the said Joshua Shreve, in his life time, and the said James Shreve, after the death of the said Joshua, frequently admitted the Biddle title, and never set up any adverse title until after the death of Beulah Sansom.

That in pursuance and by virtue of an act of the legislature, the said premises were sold at public sale, by the administrators, with the will annexed, of the said Stacy Biddle, and were struck off and sold to the defendants, and conveyed to them by deed bearing date the seventeenth of February, eighteen hundred and forty ; that immediately after receiving their deed, the defendants surveyed and marked the corners of the said tract, openly, after notice thereof given to the complainants, and went into possession, and have ever since held the possession thereof; that the defendants have been informed and believe that the complainants, or one of them, have obtained the possession of the said deeds of Joseph Biddle, and have suppressed them.

The answer further states, that the defendants were bona fide purchasers, and that they paid the purchase money for said land, and that soon after the purchase they cleared off and converted four acres of the tract into arable land. Admits that an action of tresspass was commenced therefor, by the complainants, which is still pending, as charged in the bill ; and that the defendants, with the view of speeding the cause, have twice ruled the plaintiffs to bring on their cause, or be nonsuit. Admits that the said tract consists chiefly of timber and wood land, which constitutes a very essential part of its value ; but insists that the soil is also valuable, and may advantageously be converted into arable land ; that the defendants have determined to convert more of the tract into arable land, and with that view, are cutting and clearing in the usual and ordinary manner ; that the timber is ripe and fit for cutting, and will deteriorate if left standing ; denies that the defendants are committing waste or doing irreparable injury to the land, but on the contrary, insists that they are managing the same in the best and most advantageous manner for their own interest ; states that the defendants have entire confidence in their own title, and that the complainants have no title to the premises ; and that if the defendants are mistaken in regard to their title, they are able and willing to respond in damages to those who have title ; that they purchased in good faith, paid the consideration

[Shreve v. Black et al.]

money bona fide, and are now and have been ever since the conveyance so made to them as aforesaid, in the lawful and actual possession of the said premises.

*Moffett* and *H. W. Green*, in support of the rule.

The ancient rule of the court in regard to granting injunctions in cases of tresspass, has been relaxed: 1 *Mad. Prac.* 147; *Eden on Inj.* (1st. Am. ed.) 136.

Injunctions have been frequently allowed in cases of trespass, and that where the title has been disputed or denied by the defendants. Though courts have uniformly asserted the principle, that an injunction in cases of mere trespass will not lie, yet it has been continually relaxed to prevent irreparable mischief, or to guard the inheritance from destruction.

*Flamang's case*, 7 *Vesey*, 307; *Robinson* v. *Byron*, 1 *Bro. Cha. C.* 588; *Mitchel* v. *Dors*, 6 *Vesey*, 147; *Crockford* v. *Alexander*, 15 *Vesey*, 138; *Kinder* v. *Jones*, 17 *Vesey*, 109; *Cowper* v. *Baker*, 17 *Vesey*, 127; *Grey* v. *Earl of Northumberland*, 17 *Vesey*, 281; *Thomas* v. *Oakley*, 18 *Vesey*, 185; *Whitechurch* v. *Holworthy*, 19 *Vesey*, 213; *Fingal* v. *Blake*, 2 *Malloy*, 50; *Shubrick* v. *Guerard*, 2 *Dess.* 616, 622, *n.*; *Kane* v. *Vandenburgh*, 1 *John. Chan.* 11; *Livingston* v. *Livingston*, 6 *John. Chan.* 500; *Hawley* v. *Clowes*, 2 *John. Chan.* 122; *Eden on Inj.* 115, 122, 141, 216, 217; *Blanchard* v. *Cawthorne*, 6 *Simons*, 155.

That in cases where the injunction has been denied, the same principle has been admitted.

*Pillsworth* v. *Hopton*, 6 *Vesey*, 51; *Hanson* v. *Gardiner*, 7 *Vesey*, 307; *Smith* v. *Collyer*, 8 *Vesey*, 89; *Norway* v. *Rowe*, 19 *Vesey*, 152; *Stevens* v. *Beekman*, 1 *John. Chan.* 318; *Storm* v. *Mann*, 4 *John. Chan.* 21; *Jerome* v. *Ross*, 7 *John. Chan.* 315; *Scudder* v. *Trenton Delaware Falls Co. Saxton*, 718; *Southard* v. *Morris Canal and Banking Co. Saxton*, 520; *The New-York Printing and Dyeing Establishment* v. *Fitch*, 1 *Paige* 97; *Hart* v. *Mayor of Albany*, 3 *Paige*, 213; *Higgins* v. *Woodward*, 1 *Hopkins*, 342.

The answer of one defendant will not avail against the case presented by the bill. The court will not dissolve an injunction unless an answer be put in by all the defendants upon whom the gravamen of the charge rests. If the answer of one defendant will not avail to dissolve an injunction when issued, it cannot so far affect the case made by the bill as to prevent the issuing of the injunction, especially when filed before subpœna issued, and on the eve of the argument: 1 *Hoff. Chan. Prac.* 360; *Depeyster* v. *Graves*, 2 *John. Chan.* 148.

*Wall*, for defendants, contra.

1. The bill is radically defective; it does not set out the complainants' title. When a party comes into equity for the protection of his title, he must show fully what his title is.

2. The bill contains no equity. There is no case shown where an injunction has been issued, except in a case of nuisance, or to prevent irreparable injury. The cutting of wood, valuable only as timber, has never been injoined. The practice in this state has been, to deny applications in similar cases. He cited the opinion of chancellor Vroom, in *West* v. *Walker.**

3. The case is relieved from all difficulty by the answer. It denies not only the title of the complainants, but the whole equity of the bill. Under such circumstances, the injunction, if issued, would be at once dissolved. If not conclusive as an answer, it is, at least, admissible as an affidavit.

THE CHANCELLOR. After a careful examination of this case, I feel constrained to deny the injunction. I do so from the facts as they appear by the bill and answer. The complainants' title was sufficiently stated in the bill, and the objection that it is not set out in detail has no weight in my mind. The answer, too, although made by one of the defendants, must be received, at all events, as an affidavit. This answer shows a title in the defendants, clearly traced through the ancestor of the complainants. One of the complainants is stated

* Since reported, ante, vol. ii, page 279.

16*

[Shreve v. Black et al.]

to have been in possession as tenant of those claiming under the same title with the defendants. And it is further stated, that not only the father of the complainants, but that the complainants themselves, or one of them, have admitted the Biddle title, under which the defendants claim, and have never until lately claimed by any adverse title.

The possession, too, is alleged to be now in the defendants, and to have been in them since they acquired title, and previous thereto, in those under whom they claim. Without, therefore, expressing or entertaining any opinion as to the merits of the title, or the result of the case at law, I am quite clear upon these facts, that I should not be justified in interposing the arm of the court of chancery.

I have been led to this result by the particular circumstances of this case, in which it is a source of some satisfaction to know that the defendants are able to respond at law.

I confess that the discussion before me, and the tracing of the English cases, has staggered my faith in the view which has been taken by some of my predecessors on this subject. Injunctions have repeatedly been granted in cases of mere trespass, and that too, when committed under pretence of mere title. The complainant, by stating the injury to have been committed under allegation of title, does not state himself out of court, as to the injunction. This kind of injury, too, by cutting timber on land where it constitutes its chief value, is an irreparable injury.

My embarrassment is not so much about the title as the possession. When this is claimed by the defendant, as well as the title, and that too in connection with the title, what right has the court to interfere? To enjoin both parties until a trial is had, must result in tying up all unimproved lands, about which there is any dispute, from being enjoyed by their owners.

Injunction denied.